## CHAGRIN FALLS CREAMERY CO
### In Re Assignment of

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10408. Decided April 28, 1930

Jos. B. Keenan, Cleveland, and J. A. Butler, Cleveland for Plaintiff in Error.

Wheeler & Adrion, Cleveland, and M. S. Hewgley, Cleveland, for Defendants in Error.

**LEVINE, J.**

It will be seen that $2500.00 was deducted from the purchase price by the return of some of the mortgaged chattels to the mortgagees, and by the assumption of a mortgage for $2000.00 in favor of the Ohio Creamery Co. After making these deductions and also deducting the $100.00 which was paid in cash by the purchaser, there would be due to the Assignee $711.24. It may be taken as settled law that in the absence of express authority by the court, the Assignee must sell the insolvent property for cash and that he is not authorized to extend credit to the purchaser.

Sec. 11118 GC provides:

"Court may order private sale.—When the court is satisfied that it would be for the advantage of the creditors of the assignor to sell part, or all, of the real or personal property in this state assigned at private sale, it may authorize the assignee or trustee thus to sell it either for cash, or upon such other terms as the court orders. No real estate lying in this state shall be sold for less than two-thirds of its appraised value, nor shall any personal property, be sold for less than two-thirds of its appraised value unless upon good cause shown the court orders the assignee or trustee to sell it for a less amount."

In the brief of counsel for defendants in error, it is urged that the duties of the Assignee are fully set forth and controlled by 11092-11145 GC; that they hold title to the property upon well defined legal conditions and for certain specific purposes and are powerless to do any act independent of the rights of creditors; and can make no disposition of real or personal property without the action and order of the Insolvency Court.

Our attention is directed to 11115 GC, which provides that the Assignee shall convert the assets received by him into money. Sec. 11140 GC requires the Assignment to be completed, distribution to creditors and all, within eight months, excepting only certain cases wherein upon proper application and proof the court may extend the time.

Three contentions made by defendants in error were upheld by the common pleas court and furnished the basis for the court's decision, namely:

"1st. The Assignee has been guilty of gross neglect of his duties and of gross mismanagement of his trust, and of failure to comply with statutory requirements; that by reason thereof he should be held responsible for the ap-

praised value of the property assigned to him in trust for the benefit of creditors, less the amount of claims settled, and plus interest on such balance from 8-3-1922 to date:

2nd. That the Assignee should not be allowed any compensation for his services because of his misconduct and mismanagement.

3rd. That the Assignee should not be allowed expenses incurred by him while operating the business unlawfully and without authority."

The judgment which the common pleas court allowed was based upon the appraised value of the property, which was $4967.50 less $2500.00 represented by certain chattel mortgages. A detailed statement enumerating the unauthorized acts of the Assignee are contained in the brief of defendants in error. Authorities are cited to the effect that when it is proved that the Assignee has been guilty of negligence, the appraised value of the property may be taken as a basis for measuring the extent of the Assignee's liability.

We are satisfied from a perusal of the record that the Assignee acted in good faith; that the various attempts made by him for the disposition of the property were made with a view of enhancing the proceeds of the sale of the property. Since these efforts, presumably unauthorized by the code, had failed we do not consider the same as decisive of the question before us. When the sale was actually made in July, 1924, it was so made, long after the eight-month limit set forth in **11140 GC** had elapsed. We are of the opinion that if the Assignee fails to dispose of the property within eight months it furnishes a basis for his removal by the court, if the court chooses so to do. In this case the court permitted the Assignee to continue as such; none of the creditors took any steps to effect his removal and there is credible evidence in the record that the creditors knew not only that the Assignee continued as Assignee after the expiration of eight months but also that he had made various efforts to dispose of the property. No objection of any kind was entered by any of the creditors until March 22, 1928, which was some seven months after the sale made by the Assignee in July 1927 was approved by the court.

We are of the opinion that even though the statutory period of eight months had elapsed, that if the Assignee was permitted to continue to act as Assignee without objection by any of the creditors, and if such creditors had knowledge of the fact that the Assignee was endeavoring to dispose of the property, that upon recognized principles of equity they are estopped from asserting their objection upon purely technical grounds.

Under the terms of **11118 GC** above referred to, the Assignee is authorized to sell the property at private sale when so authorized by the court. He may sell the same at two-thirds of the appraised value and in the absence of express authority by the court, must sell the same for cash. He is authorized by the terms of this section of the code to sell the property at two-thirds of the appraised value without any express authority from the court to that effect. This he did in the instant case and the measure of his liability is the actual price received for the property. His act in extending credit in the sum of $711.24 is clearly unauthorized and he is liable personally for that amount.

It is therefore our holding that the judgment of the common pleas court is to be modified so as to fix the measure of the Assignee's personal liability, in accordance with the price actually obtained for the property which is not less than two-thirds of the appraised value. In view of the fact that the Assignee did not strictly comply with the terms of the statute no compensation is to be allowed to him nor is he to be allowed anything for expenses incurred by him. A journal entry may be drawn accordingly.

Vickery, PJ, and Sullivan, J, concur.